MISSOURI PROVINCE EDUCATIONAL INSTITUTE, Appellant, v. JOSEPH A. SCHLECT ET AL.—15 S. W. (2d) 770.

Division One, March 29, 1929.

*Leahy, Saunders & Walther* for appellant.

*Frank X. Hiemenz* for respondent.

LINDSAY, C.—This is a suit to quiet title. The plaintiff, a corporation, sought to have it adjudged that certain real estate owned by the plaintiff in the city of St. Louis, was not subject to the restrictions applicable to the adjoining lots owned by defendants. The lots of defendants are a part of a restricted residential subdivision known as Compton Heights, which includes several blocks and parts of blocks. The property of plaintiffs is not situated in that subdivision.

The petition sets forth the facts constituting the title of the plaintiff to the parcel of land owned by plaintiff, as not being a part of said subdivision; and sets forth the grounds of the claim of defendants that under a deed in plaintiff's chain of title, plaintiff's property is subject to the restrictions applicable to the lots in said subdivisions. Defendants, by their answer, and upon the facts alleged in the petition, claim an interest in the plaintiff's property; and by way of affirmative relief, ask that the restrictive covenants applicable to their lots as a part of Compton Heights Subdivision, be decreed to be applicable to plaintiff's property.

A statement of all the allegations of the petition is not necessary, since a statement of the evidence discloses the issue made by the pleadings. The property of the plaintiff was acquired through mesne conveyances from one George O. Carpenter, who acquired it in 1882. The property is a parcel of ground in what was then block 1361, in the city of St. Louis. This parcel extends from north to south, 330

feet, and from east to west, 301 feet and six inches. It includes approximately two-thirds (the north two-thirds) of block 1361. The then remaining portion of said block 1361 is the ground owned by defendants. There is no street or alley between the plaintiff's property and defendant's lots. Carpenter, in 1882 and 1883, improved the property owned by him, and lived thereon until 1906. However, in 1888 title was transferred by him to his wife Caroline Carpenter, and in 1906 they conveyed the property to one Bollman. There were no restrictions whatever upon the Carpenter property, until, and unless, that property was subject to the restrictions applicable to property in the Compton Heights Subdivision, by the terms of the deed of the Carpenters to said Bollman, plaintiff's grantor.

The Compton Heights Subdivision was laid off as an exclusively residential district, at some time after Carpenter improved and began to live upon his property, and before the Carpenters conveyed to Bollman. The subdivision was laid off by the Compton Hill Improvement Company; the defendants hold title to their property through the Compton Hill Improvement Company, and their lots, and all lots in said subdivision, are subject to elaborate restrictions upon the manner of their improvement and use. The subdivision, as laid off, did not include the property owned by Carpenter, but did include all that part of block 1361 not owned by him, and now owned by defendants. The Carpenter property, now plaintiff's property, is bounded on the north by Russell Avenue, on the east by Compton Avenue, on the west by east line of block 1362, and on the south by the north line of the three lots severally owned by defendants Schlects, defendant Pommer and defendants Louis M. Rumsey, Jr., and others, as trustees under the will of Louis M. Rumsey deceased. The lots of defendants are approximately 100 feet in width from east to west, and extend from the south line of plaintiff's property, southward about 155 feet, to the north line of the north prong of Longfellow Boulevard, a double street, extending east and west through the subdivision. The lots owned by the respective defendants comprise lots known as 18, 19 and 20, of block "A," of the subdivision. Block "A" of the subdivision includes many lots, in addition to the lots of defendants. By an ordinance of the city of St. Louis, approved November 17, 1920, city blocks 1361, 1362, 1363, 1364 and 1366 were converted into block 1365 of the city of St. Louis.

The deed of the Carpenters to Bollman, plaintiff's grantor, was executed on October 22, 1906. The property granted was described as follows: "A lot in the east half of the northwest quarter of block number 26 of De Ward's Survey of the St. Louis Commons and situated in city block number 1361 of said city of St. Louis, beginning at a point, etc. . . ." (description by metes and bounds). Following the description, are the words, "subject to restrictions and

conditions as of record in said block.'' There was no reference to restrictions in the covenants of warranty.

The deed from Bollman and wife to the plaintiff, executed on January 8, 1915, conveyed the same property, by description to the same effect, in somewhat different terms, but showing it was in block 1361, and as being bounded on the south by lots 18, 19 and 20 of said block. It made no reference to any restriction.

Lots 19 and 20 of block ''A'' of Compton Heights Subdivision, were acquired by Louis M. Rumsey in 1893, by deed from the Compton Hill Improvement Company, which described those lots as situated in block 1361, and contained the restrictions imposed by that company upon the lots sold, and set forth also the restrictions of like character to be common to all deeds to lots in the subdivision. Defendants Schlecht and wife acquired lot 19 from Louis M. Rumsey. The date of that conveyance is not given. Defendant Pommer acquired lot 18 through mesne conveyances from the Improvement Company. The date of Pommer's acquisition of title to lot 18 is not shown, nor the date of its conveyance by the Improvement Company to Pommer's predecessor in title.

It was admitted on the trial that all of the lots in the subdivision were and are subject to the restrictions prescribed by the Improvement Company. The record and the plat introduced in evidence show that the land included in city blocks 1361 and 1366, both inclusive, extends from Compton Avenue, west, to Grand Avenue, with no north and south street between Compton Avenue and Grand Avenue, and show also, that the north parts of blocks 1361 to 1366 inclusive, along Russell Avenue, are not a part of Compton Heights Subdivision. Immediately south of and contiguous to the properties mentioned as not part of the subdivision, is the line of lots extending from Compton Avenue to Grand Avenue, which are included in the subdivision; and included in the last-named lots are the lots of defendants. All of these lots last mentioned, front on the south, upon the north line of the north prong of Longfellow Boulevard, heretofore mentioned as a double street extending east and west through the subdivision.

The sole question for determination in the case is whether by virtue of the provision in the deed from the Carpenters to Bollman, the latter took the property conveyed to him subject to the restrictions in force on defendants' lots situated in Compton Heights Subdivision, for the benefit of the owners of said lots, that is, whether a negative easement in the land conveyed to Bollman, became annexed to the ownership of the lots of defendants. The deed from the Carpenters to Bollman was the penultimate link in plaintiff's chain of title.

The nature of the restrictions upon defendants' lots under their deeds from the Compton Hill Improvement Company may be noticed as briefly as is practicable, considering their length. In these deeds

there was recital that the Improvement Company had expended large sums of money in improvements designed to make the subdivision desirable for purposes of residence, and had imposed on each lot for the benefit of every other lot, the conditions in the deed set forth, and that the easement as created and made pertinent to each lot, was an inducement to the grantee to make the purchase. Of course, the Compton Hill Improvement Company had nothing to do with the Carpenter property, and those restrictions had not been placed for the benefit of that property.

The first restriction established the building line of the lot at an average of thirty feet from the north line of Longfellow Boulevard. The lots of defendants, as will be recalled, front south on Longfellow Boulevard. The land of the plaintiff fronts north on Russell Avenue.

The second restriction provides that but one building shall be placed upon each of said lots, and that such building is to be used exclusively for a private residence. The lots of defendants and all other lots in the subdivision were laid off with a width and frontage of approximately 100 feet. The property of plaintiff has a frontage of 301 feet, six inches, on Russell Avenue and extends back along Compton Avenue a distance of 330 feet. Upon the face of it, this second restriction would require plaintiff's property to be treated as one lot and confine building thereon to a single building.

The third restriction permits a stable, or other subsidiary building, to be erected on each lot, but such building is not to be placed within seven and one-half feet from the rear line of the lot. By the third restriction the seven and one-half feet next to the rear line of the lot could not be built upon, and there was reserved to the Compton Hill Improvement Company an easement in such strip for the laying or repairing of water, gas and other pipes and wires. This easement so reserved by the terms of the deeds, was "exclusively vested" in the Improvement Company, until that company should have sold all lots on the continuous strip through block "A" of the subdivision. When that occurred, the easement was to vest in the owners of the abutting lots, subject to control being vested in the majority of the abutting owners, "each lot being entitled to one vote."

The fourth restriction described the distance which a building on the lot should be erected from the side lines of each of the lots.

The fifth restriction provided that no building costing less than $8000 should be erected on the lot unless the plans were first submitted to and approved by the Compton Hill Improvement Company. There was also provision prescribing how and where any fence or wall should be erected on said lot, and that the existing grade of the lot, for a distance of sixty feet from the street, should not be changed more than twelve inches unless by consent of the Improvement Company, and of the owners of the adjoining lot on each side. As show-

ing the inapplicability of these restrictions to plaintiff's property, it is again observed that plaintiff's property fronts north on Russell Avenue, is bounded on the east by Compton Avenue, and on the west by an undivided tract of approximately the same size as plaintiff's tract, which latter tract is not a part of the subdivision. The deeds to defendants' lots also contained a provision that the restrictions therein might be enforced "by any person owning a lot in Compton Heights, which is subject to the same restriction or conditions." These restrictions are referred to as circumstances to be considered in construing the deed from the Carpenters to Bollman, and upon the question of the intention of the parties to that deed.

The only witness called to testify was George O. Carpenter, husband of Caroline Carpenter, owner of the property. Counsel for defendants construe the testimony of Carpenter as stating he intended by the deed to Bollman to restrict the property. His testimony is not wholly definite as to his intention; but, in any event, the construction of the deed is not to be controlled by his statement, made at the trial, as to what he had in mind, at the time the deed was made. The terms actually used in the deed construed in the light of the circumstances surrounding the parties must govern. The trial court found that Caroline Carpenter, in the deed to Bollman, adopted the restrictions in the deeds of defendants, of record in the block, as applicable to the land conveyed as fully as if they had been written out in that deed; and that by the use of words "subject to restrictions and conditions, as of record in said block," Caroline Carpenter intended to follow out the general plan and scheme of restrictive covenants applicable to defendants' lots, and the entire subdivision of which defendants' lots were a part; that defendants' lots were burdened and encumbered thereby, with an easement in favor of each of the lots of defendants. Counsel for plaintiff on the appeal contend that considering the nature of the restrictions on defendants' property, and under the rule of construction which governs in such cases, it must be held it was not the intention to make the general restrictive covenants of the deeds of the Improvement Company applicable to plaintiff's property; that the words used in the Carpenter-Bollman deed, were merely an exception to the warranty as to any existing easement of record upon the land conveyed; that the language used was merely precautionary; created no new right, and imposed no burdens on the property not theretofore existing; that since the Carpenters had no adjoining property, or property in city blocks 1361 to 1366, as then constituted, and the restriction could only operate for the benefit of third persons, the provision was void for want of consideration and mutuality, even though imposed for the benefit of such third parties; and, that since the defendants did not purchase their lots in consideration of the restrictions contained in

the Carpenter deed, equity will not create a right to enforce the restrictions in defendants' favor. Certain rules are to be borne in mind.

Restrictions upon the free use of real property are not favored; are to be strictly construed, and doubts in respect thereto are to be resolved in favor of the free use of the property. [18 C. J. 385, 389; Kenwood Land Co. v. Hancock Investment Co., 169 Mo. App. 715; Scharer v. Pantler, 127 Mo. App. 433; Kitchen v. Hawley, 150 Mo. App. 497; Noel v. Hill, 158 Mo. App. 426; Bolin v. Tyrol Investment Co., 273 Mo. 1. c. 261.]

The burden is upon lot-owners claiming the benefit of restrictive covenants, or provisions, to show that such restrictions exist, and were intended for the benefit of the particular lots owned by them. [Berry, Restrictions on Use of Real Property, pp. 327, 328; Toothaker v. Pleasant, 315 Mo. 1248; Hay v. St. Paul M. E. Church, 196 Ill. 633; Lowell v. Lowell, 153 Mass. 530; Hemsley v. Marlborough Hotel Co., 62 N. J. Eq. 164, affirmed 63 N. J. Eq. 804.]

Under the circumstances of this case it is not inappropriate to refer to another rule. The defendants were not parties to the deed from the Carpenters to Bollman, nor privy to the consideration of that deed. They are in the position of claiming that the provision in that deed, contractual in nature, was made for their benefit, as owners of certain lots. In that situation, and to give them the benefit of that agreement, it must clearly appear that such agreement was made for their benefit, as its object. It is not enough that they might be incidentally benefited. It must be shown that they have an equitable interest in the performance of the agreement, or more accurately, that the terms of the agreement be not violated. [13 C. J. pp. 709, 817; St. Louis v. Wright Contracting Co., 202 Mo. 1. c. 468; Beattie Mfg. Co. v. Clark, 208 Mo. 89, 106.]

The argument for defendants is that the Carpenters could legally contract with Bollman for the benefit of defendants as adjoining lot owners, and that if Bollman was willing to accept the limitations, conditions or covenants in the deed and did accept them, he was bound thereby, although they inured to the benefit of defendants, and he having done so, defendants may enforce them against plaintiff, since the deed mentioned is in the direct chain of plaintiff's title. It may be said that the case for plaintiff is not presented on the theory that plaintiff had no notice of the provision in the deed to Bollman.

In every such case, the paramount question is that of the intention of the parties, and the controlling question here is that of the intention of the parties to the deed from the Carpenters to Bollman. That intention is to be ascertained from the terms of the deed considered in the light of the circumstances surrounding the parties. The intention to adopt the restrictions contained in defendants' deeds and to make them a part of the terms of the deed to Bollman, as a

limitation upon the estate conveyed in favor of defendants must be made plain. Such a condition or limitation being in derogation of the fee conveyed, will not be extended by implication to include anything not clearly expressed. Zinn v. Sidler, 268 Mo. 680: "The words 'clearly expressed' as used by this and other courts, have no significance unless they mean that if a reasonable and substantial doubt is raised by the words employed in the covenant it must be resolved against the grantor." [Bolin v. Investment Co., 273 Mo. 1. c. 262.] In Hays v. St. Paul M. E. Church, 196 Ill. 1. c. 636, it is said: "In construing the provision, restrictions are not favored, although where the intent is clearly manifested the court will enforce them. When a fee is conveyed, limitation and restrictions upon the use of the property are not favored, and all doubts, as a general rule, are to be resolved against them."

The claim of defendants is to be considered under the foregoing rules. The terms relied upon here consist of the words "subject to restrictions and conditions as of record in said block," immediately following the description of the property. In that description two blocks are mentioned, "block 26 of De Ward's Survey of the St. Louis Commons," and "city block 1361." On the face of the deed, the words "said block" might refer to either of the foregoing. The case was tried, however, on the theory that the reference was to city block 1361, and it is considered here on that theory. But, this reference is made, as to a matter appearing in the deed itself, illustrative of the loose and indefinite language employed in respect to a provision, which, under the rules, must be subjected to a strict construction. The loose language used is inconsistent with the idea of a clear purpose to adopt specific restrictions to apply to a subject, to which they did not theretofore apply, and restrictions too, incapable of application. It would have been easy for the parties to the deed to have said that the property conveyed was to be subject to restrictions applicable to the others lots in block 1361, as prescribed in deeds from the Compton Hill Improvement Company. They did not express that intention clearly. But the nature of those restrictions, as a condition or circumstances then existing, cannot be ignored in the effort to ascertain what was the intention of the parties. Aside from the one particular, that by the restrictions on defendants' lots no building could be erected on the property other than a private residence, the restrictions were inapplicable to the property owned by the plaintiff. The restrictions were designed and adapted to lots of a uniform frontage of 100 feet. They expressly applied to defendants lots as fronting on Longfellow Boulevard, and those lots were of a depth of between 155 and 160 feet. The property of plaintiff is equal in area to six lots of the size owned by each defendant. Referring again somewhat to the restrictions, it is to be ob-

served that they reserve to the Improvement Company an easement of a strip of ground seven and one-half feet in width upon the rear of each lot. They provide that no building costing less than $8000 should be erected on the lot, unless the plans were first submitted to and approved by the Improvement Company. The existing grade of a lot at a distance of sixty feet from the street could not be changed more than twelve inches, without consent of the Improvement Company, and the owner of the adjoining lot on each side. The Compton Heights Improvement Company was not in privity of estate or contract with the Carpenters. One side of plaintiff's property is bounded by a street and the other side is bounded by a lot not a part of the subdivision, and of a size equal to that of plaintiff's lot. To hold that by the language of the deed under the existing circumstances including the nature of the restrictions on defendants' lots, the parties to the deed intended to impose these restrictions on the lot conveyed would be a strained conclusion. Although it is admitted that at and prior to the date of the deed from the Carpenters to Bollman there were no restrictions on the property, we cannot, under the circumstances here appearing, hold it to be plain that the provision in the deed was not precautionary.

Counsel for defendants insist that the fact that the Carpenters owned no other property in the immediate vicinity of the lot conveyed to Bollman, and having parted with their title to that, had no property to protect, is conclusive evidence that they intended the covenant to inure to the benefit of defendants. Meriwether v. Joy, 85 Mo. App. 634, is cited. In that case the deed to Joy, defendant in a suit for injunction, explicitly set out the restrictions to which the lot was subject. There was no doubt but that by the express terms of the deed, the property conveyed to Joy was subject to restrictions as to a building line, and that only a private residence could be erected upon the property. Those restrictions were written into Joy's deed. The only question in the case was whether the plaintiffs were entitled to enforce the restrictions. If it be conceded in this case that the parties to the deed from Carpenters to Bollman intended to impose restrictions, then the decision in Meriwether v. Joy, would be authority for the contention that such restrictions were imposed in favor of defendants; but we do not regard that decision as an authority upon the controlling question in this case. The primary question here is whether there was an intention to restrict the property at all. Counsel for plaintiff have cited certain cases in support of their contention that the language used in the deed to Bollman was merely an exception to the warranty, and was not intended to impose new obligations against the property, and is to be regarded as merely precautionary. [Donahoe v. Turner, 204 Mass. 274; Richter v. Distelhurst, 116 N. Y. App. Div. 269; Van Duyn v.

Chase & Co., 149 Iowa, 222.] Without going into the facts in each of these cases it is enough to say that each of them is an illustration of the rule enforced by all courts, that restrictions upon the free use of property are not favored, and are strictly construed. The case of Hays v. St. Paul M. E. Church, supra, is another illustration of the application of the same rule.

Our conclusion under the facts of the case is, that the language used in the deed from the Carpenters to Bollman cannot be conclusively held to be precautionary, nor can it be conclusively held to be the imposition of restrictions not theretofore existing upon the lot of plaintiff for the benefit of defendants as owners of adjoining lots. Its meaning, at best, is doubtful.

For that reason the judgment is reversed and the cause remanded, with direction that judgment be entered in favor of the plaintiff as against these defendants. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. *Atwood, P. J.,* and *Ragland* and *Gantt, JJ.,* concur; *Frank, J.,* not sitting.